*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

YAAKOV A. KATZ, *individually and on behalf of a class*,

        Plaintiff,

v.

SIX FLAGS GREAT ADVENTURE, LLC and SIX FLAGS ENTERTAINMENT CORPORATION,

        Defendants.

---

Civil Action No. 18-116 (FLW) (DEA)

OPINION

**WOLFSON, United States District Judge:**

In this putative class action, Plaintiff Yaakov A. Katz ("Plaintiff") alleges that Defendants Six Flags Great Adventure, LLC ("SFGA") and Six Flags Entertainment Corporation ("SFEC") (collectively, "Defendants" or "Six Flags") willfully violated the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (codified as amended at 15 U.S.C. § 1681c(g)), by printing more than the last 5 digits of Plaintiff's credit card number on a cash register receipt. Defendants move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks Article III standing. In the alternative, Defendants contend that dismissal is warranted, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. In response, Plaintiff moves to remand this matter to state court, pursuant to 28 U.S.C. § 1447(c), on the grounds that if, as Defendants assert, subject matter jurisdiction is lacking, the proper remedy is remand rather than dismissal. For the reasons that

1

follow, the Court finds that: (i) Plaintiff lacks Article III standing, and thus, there is no subject matter jurisdiction; and (ii) that remand, rather than dismissal, is the proper remedy. Consistent with these findings, the Court grants Plaintiff's Motion to Remand this case to the Superior Court of New Jersey, Ocean County, Law Division. Defendants' Motion to Dismiss is denied as moot.

I.  **BACKGROUND**[1]

On November 30, 2017, Plaintiff, individually and on behalf of those similarly situated, initiated this putative class action in state court, alleging that Defendants willfully violated FACTA. In 2003, Congress enacted FACTA as an amendment to the Fair Credit Reporting Act of 1970 ("FCRA"), 84 Stat. 1127, as amended, 15 U.S.C. § 1681, *et seq*. Among other things, FACTA was intended to "prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, [and] make improvements in the use of, and consumer access to, credit information . . . ." Pub. L. No. 108-159, 117 Stat. 1952.

Relevant here, as part of the effort to prevent identity theft, "FACTA prohibits merchants from printing certain credit and debit card information on receipts." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 373 (3d Cir. 2012). Specifically, 15 U.S.C. § 1681c(g), FACTA's "truncation provision," provides as follows:

> (g) Truncation of credit card and debit card numbers
>
> (1) In general
>
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5

---

[1] For the purposes of the instant Motions, the Court will accept as true the facts alleged in the Complaint, drawing all inferences in favor of Plaintiff, the non-moving party. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must "accept all factual allegations as true, construe the . . . complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief.").

> digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.
>
> (2) Limitation
>
> This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g).

FACTA imposes civil liability for violations of the truncation provision, "with the available remedies dependent upon whether the violation was negligent or willful." *Long*, 671 F.3d at 374. In that regard, a plaintiff may recover either actual damages or statutory damages between $100 and $1,000 for willful violations of FACTA. 15 U.S.C. § 1681n(a). Conversely, for negligent FACTA violations, a plaintiff may only recover actual damages. *Id.* at § 1681o(a).

Here, Plaintiff's FACTA claim is premised on a single transaction at the SFGA amusement park (the "Park") located in Jackson, New Jersey. Complaint ("Compl."), ¶¶ 58-65. Specifically, Plaintiff alleges that on August 5, 2017, he used an American Express credit card to make a purchase at the Park, and that, upon completion of the purchase, he was provided with a customer copy of a computer-generated cash register receipt (the "Receipt") that published both the first six and last four digits of Plaintiff's American Express card, in violation of FACTA's truncation requirement. *Id.* at ¶¶ 59-60. Plaintiff further alleges, upon "information and belief, that Defendants' computer systems . . . were programmed . . . to print the six first digits of credit card numbers on each and every credit card receipt" that those systems generated. *Id.* at ¶ 61. As a result, Plaintiff draws an inference that Defendants willfully and recklessly violated the statute's truncation requirement by printing "more than the last 5 digits of [the putative class members'] card number[s] on a minimum of thousands of receipts provided to cardholders at the

point of transaction." *Id*. at ¶ 4. Plaintiff avers that, as a consequence of these "violative receipt[s]," the putative class members have "been uniformly burdened with an elevated risk of identify theft," and thus, are "entitled to an award of statutory damages." *Id.*

As noted, on November 30, 2017, Plaintiff filed the Complaint in the Superior Court of New Jersey, Ocean County, Law Division, asserting a single cause of action under FACTA. ECF No. 1-2. On January 4, 2018, Defendants removed the instant matter to this Court, pursuant to 28 U.S.C. § 1441(a), on the basis that federal question jurisdiction exists over Plaintiff's FACTA claim under 28 U.S.C. § 1331.[2] ECF No. 1.

On January 11, 2018, Defendants moved to Dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. ECF No. 4. Most relevant here, Defendants argue that the Complaint fails to establish that Plaintiff sustained a concrete injury-in-fact, and thus, that Article III standing is lacking, thereby depriving this Court of subject matter jurisdiction. In addition to opposing Defendants' Motion to Dismiss, Plaintiff responded by filing the instant Motion to Remand, arguing that: (i) as the parties invoking federal jurisdiction, Defendants bear the burden of establishing subject matter jurisdiction; (ii) Article III standing is an element of subject matter jurisdiction; and (iii) that in light of Defendants' concession that Plaintiff does not have Article III standing, this Court lacks subject matter jurisdiction, and thus, must remand this action under 28 U.S.C. § 1447(c). ECF Nos. 10, 12. Both of these Motions have been fully briefed. ECF Nos. 13-15.

## II. DISCUSSION

---

[2] In their Notice of Removal, Defendants also assert this case meets the requirements for removal under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.

As a preliminary matter, the Court notes that Defendants' Motion to Dismiss for lack of subject matter jurisdiction and Plaintiff's Motion to Remand are largely intertwined. In that regard, Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks Article III standing because he has not sufficiently alleged an injury-in-fact, and thus, that this Court should dismiss the case for lack of subject matter jurisdiction. Specifically, Defendants contend that the harm alleged by Plaintiff – a future risk of identity theft – is entirely speculative, and thus, does not constitute a concrete injury-in-fact. Additionally, Defendants maintain that this Court should dismiss this matter, rather than remand, because: (i) removal was proper on the basis of Plaintiff's FACTA claim and under CAFA; (ii) remand would be futile, because, "[i]n applying federal precedent, the state court would necessarily reach the conclusion that the Complaint fails to adequately allege any violation or willful conduct by Six Flags," Defs.' Opp. to Pl.'s Mot. to Remand at 5-6; and (iii) remand would run contrary to public policy and the Congressional intent behind FACTA.

In response, Plaintiff takes no position on the issue of Article III standing. *See* Pl.'s Mot. to Remand at 4 ("Mr. Katz, in contrast, takes no position on his standing to bring this suit in federal court after *Spokeo*."). Instead, Plaintiff cites the well-settled proposition that the party invoking federal jurisdiction bears the burden of showing that subject matter jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And, because this is a removal case, Plaintiff argues that Defendants bear the burden of establishing all elements of subject matter jurisdiction, including Article III standing. Accordingly, because Defendants contend that Article III standing, an element of subject matter jurisdiction, is lacking, Plaintiff posits that this Court must remand this case, pursuant to 28 U.S.C. § 1447(c), rather than dismiss.

    A.    **Legal Framework**

Because the crux of the present dispute implicates issues of this Court's subject matter jurisdiction, as well as the provisions governing removal and remand, I begin by briefly reviewing the relevant legal framework. It is axiomatic that, as "courts of limited jurisdiction," federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1331). State courts are not so limited, and, except where a federal statute provides otherwise, have concurrent jurisdiction "to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *see Claflin v. Houseman*, 93 U.S. 130, 136 (1876) ("[I]f exclusive jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it."). Significantly for the purposes of the instant dispute, "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or . . . a federal statute." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). Accordingly, except where a federal statute expressly or impliedly provides for exclusive jurisdiction in federal courts, a plaintiff may choose to file federal claims in either state or federal court.

However, pursuant to 28 U.S.C. § 1441(a),[3] a defendant may remove a civil action "from state court to federal district court so long as the district court would have had subject-matter

---

[3] Section 1441(a) provides:

jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014); *see MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015) ("Federal courts are courts of limited jurisdiction, and a case can only be removed to a federal district court if the case could have originally been filed there."). The removability of a matter is determined from the plaintiff's pleadings at the time of removal. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951). Significantly, where, as here, the propriety of removal is challenged, the party asserting federal jurisdiction bears the burden of showing that removal is proper. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) ("A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.'") (citation omitted). "This requires a showing that the federal court has subject matter jurisdiction." *HealthFirst*, 629 F. App'x at 411. If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute [is] strictly construed and all doubts [are] resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985).

    **B.    Article III Standing**

Here, it is undisputed that Defendants, as the parties invoking federal jurisdiction, bear the burden of establishing that subject matter jurisdiction exists; *i.e.*, that this case could have

---

    Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
28 U.S.C. § 1441(a).

originally been filed in federal court. *See Judon*, 773 F.3d at 500. In their Notice of Removal, Defendants assert, in relevant part, that removal is proper on the basis of this Court's federal question jurisdiction over Plaintiff's FACTA claim. ECF No. 1 at ¶¶ 7-8. In his Motion to Remand, however, Plaintiff challenges the propriety of removal, arguing that Article III standing is an element of subject matter jurisdiction, and thus, because Defendants posit that Article III standing is lacking, this Court is deprived of subject matter jurisdiction and remand is required. In opposition, Defendants contend that removal was proper on the basis of federal question jurisdiction alone, and thus, that the lack of Article III standing is a basis for dismissal, not remand.

Article III of the United States Constitution confines the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. art. III, § 2. This "bedrock requirement," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982), protects the system of separation of powers and respect for the coequal branches by restricting the province of the judiciary to "decid[ing] on the rights of individuals." *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803).

Courts have developed several justiciability doctrines to enforce the "case" or "controversy" requirement. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Among those doctrines, "[t]he [Article] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). The seminal standing question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of

the court's remedial powers on his behalf."[4]  *Seldin*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Standing is a jurisdictional matter, and thus, "[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims . . . ."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

As noted, here, Defendants argue that Plaintiff lacks Article III standing because Plaintiff has not alleged an injury-in-fact.  Specifically, Defendants contend that the harm alleged by Plaintiff – a future risk of identity theft – is entirely speculative, and thus, does not constitute a concrete injury-in-fact.  Plaintiff takes no position on the issue of Article III standing, arguing that, because Defendants, the parties bearing the burden of establishing subject matter jurisdiction, concede that subject matter jurisdiction is lacking, this Court should remand the matter without rendering a finding on the issue of Article III standing.

At the outset, I note that, under similar circumstances, at least one court has found that where no party contests the lack of Article III standing in a removal case, a federal court may remand the matter without rendering a finding on Article III standing.  *See Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 912 (N.D. Ill. 2016) ("Because the parties are now aligned in the view that I lack subject-matter jurisdiction, I need not accept defendants' invitation to undertake a *Spokeo* analysis to conclude that remand is required.").  That said, such an approach raises interesting questions regarding the settled principles of limited jurisdiction that govern federal courts.  To that end, as noted, because federal courts are courts of limited jurisdiction, they have no power to adjudicate cases where subject matter jurisdiction is lacking.  As an element of subject matter jurisdiction, "[t]he question of standing is not subject to waiver."  *United States v.*

---

[4] "In the context of class actions, Article III standing 'is determined vis-a-vis the named parties.'"  *McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 243 (3d Cir. 2012) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 306 (3d Cir. 1998)).

*Hays*, 515 U.S. 737, 742 (1995). Indeed, even where neither party raises an issue of subject matter jurisdiction, "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'"[5] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted). As a result of this independent obligation and the inability of parties to waive subject matter jurisdiction, a federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction – whether it be that jurisdiction does or does not exist – without rendering an affirmative finding on that issue. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986) ("When . . . Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect."). While that issue is undoubtedly less problematic where both parties concede that jurisdiction *does not* exist, here, Plaintiff does not go so far as conceding that he lacks Article III standing; he simply takes no position on the issue. In any event, because, as detailed, *infra*, I find that Article III standing is lacking in this case, I am not remanding this case based solely on the fact that no party contests the lack of Article III standing.

To meet the "irreducible constitutional minimum" of Article III standing, the plaintiff must satisfy three well-settled elements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.
>
> Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the

---

[5] Additionally, that the relief sought by both parties – remand or dismissal – is predicated on a *finding* that subject matter jurisdiction is lacking militates in favor of the necessity to render an affirmative finding on the issue of Article III standing. Moreover, because Defendants also removed this action on the basis of CAFA, the Court must decide whether Plaintiff has standing to assert the FACTA claim on behalf of the putative class.

10

> defendant, and not the result of the independent action of some third party not before the court.
>
> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations, alterations, and citations omitted); *see Spokeo*, 136 S. Ct. at 1547 ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). The standing inquiry in this case centers on the "'[f]irst and foremost' of standing's three elements," injury-in-fact. *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

"The injury-in-fact requirement exists to assure that litigants have a 'personal stake' in the litigation." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005). To carry its burden on the injury-in-fact requirement, a "plaintiff must claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (citation omitted). An injury is "concrete" where it is "real, or distinct and palpable, as opposed to merely abstract." *Id*. (citation omitted); *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). An injury is "particularized" where it affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. Neither concreteness nor particularization, standing alone, is sufficient to establish injury-in-fact; rather, the injury-in-fact "must be both concrete *and* particularized." *Spokeo*, 136 S. Ct. at 1548 (emphasis in original).

Here, the determination of whether Plaintiff has alleged a sufficiently concrete and particularized injury-in-fact implicates the Supreme Court's decision in *Spokeo*, which clarified the injury-in-fact inquiry in the context of statutory violations. In *Spokeo*, a consumer brought

11

an action alleging that a website operator violated the FCRA by disseminating inaccurate information regarding the consumer's creditworthiness over the operator's public search engine database. *See id*. at 1544. After the district court dismissed the complaint for lack of standing, the Ninth Circuit reversed, finding that the consumer met the injury-in-fact requirement by alleging that: (i) the operator violated *his* statutory rights, not just the rights of other people; and (ii) that his "'personal interests in the handling of his credit information [were] individualized rather than collective.'" *Id.* (citation omitted).

The Supreme Court vacated the Ninth Circuit's decision as "incomplete," finding that although "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized,'" the Ninth Circuit erred in focusing on the second characteristic (particularity) without analyzing the first (concreteness). *Id.* at 1545 (emphasis added). After reiterating that an injury-in-fact must be both concrete *and* particularized, the *Spokeo* Court provided guidance as to what constitutes a "concrete" injury, and remanded the case for a finding on the concreteness factor. *See id*. at 1545-49. Specifically, the Court rejected the argument that an injury must be "tangible" in order to be "concrete," observing that an intangible harm may constitute an injury under certain circumstances. *Id.* at 1549. In that regard, the Court explained that "both history and the judgment of Congress play important roles" in determining whether an intangible harm constitutes an injury-in-fact. *Id*. The historical inquiry asks "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* But, even if an injury was "'previously inadequate in law," Congress may elevate it "'to the status of legally cognizable" injury. *Id.* (quoting *Lujan*, 504 U.S. at 578).

Significantly for the instant case, however, the *Spokeo* Court also cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. In that regard, "Article III standing requires a concrete injury even in the context of a statutory violation," and thus, allegations of "a bare procedural violation, divorced from any concrete harm," are insufficient to "satisfy the injury-in-fact requirement . . . ." *Id.* Stated differently, it is "clear from *Spokeo* that there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017). Ultimately, where the harm alleged arises purely from statute, without any relation to a traditional harm, the critical standing question is whether "the particular procedural violations alleged . . . entail a *degree of risk* sufficient to meet the concreteness requirement." *Spokeo*, 136 S. Ct. at 1550 (emphasis added).

Here, given the fact that no party argues that Plaintiff has sufficiently alleged a concrete injury-in-fact, the Court will not engage in a protracted standing analysis. Because Plaintiff alleges conduct that is particularized as to him, the Court's focus is limited to the concreteness requirement. As applied to this case, the question becomes whether, in light of Congress' decision to provide a private right of action under FACTA for violations of the truncation provision, printing the first six and last four numbers of Plaintiff's credit card on a receipt exposes Plaintiff to such a degree of identity theft as to constitute a "concrete" injury.

While the Third Circuit has not yet addressed whether a plaintiff alleging similar violations of FACTA's truncation provision has Article III standing, various courts considering

13

allegations nearly identical to those raised by Plaintiff have found injury-in-fact lacking. *See*, *e.g.*, *Kamal v. J. Crew Grp., Inc.*, No. 15-0190, 2016 WL 6133827, at *3-4 (D.N.J. Oct. 20, 2016) (dismissing claim for violation of FACTA's truncation provision for failure to allege a concrete injury-in-fact); *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 117, 120-21 (2d Cir. 2017) (affirming dismissal of complaint alleging a violation of FACTA's truncation provision for failure to establish a concrete injury-in-fact, because, although the complaint focused broadly on identity theft concerns, it was "'devoid of specific factual allegations concerning . . . any consequences that stemmed from'" the statutory violation); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (dismissing claim alleging a violation of FACTA's truncation provision for lack of standing, where the plaintiff failed to allege that he either suffered concrete harm because of the violation, or that the violation created "any appreciable risk of harm."); *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 520 (E.D. Pa. 2017) (dismissing FACTA claim for failure to establish Article III standing, where the plaintiff alleged "only that he is subject to an increased risk of harm, not that he has suffered an actual injury."); *Stelmachers v. Verifone Sys., Inc.*, No. 14-04912, 2016 WL 6835084, at *3 (N.D. Cal. Nov. 21, 2016) (dismissing claim for violation of FACTA's truncation provision, where the plaintiff failed to establish "an injury that is concrete under the teachings of *Spokeo* . . . .").

For example, in *Kamal*, a consumer alleged that after making several purchases at the defendants' retail establishments, he was provided with receipts containing the last four and first six digits of his credit card number, in violation of FACTA's truncation provision. 2016 WL 6133827 at *1-2. The court dismissed the case for lack of Article III standing, finding that the consumer's allegations were insufficient to meet the concreteness requirement of injury-in-fact. *See id*. at *3-4. As a preliminary matter, the court found that the only alleged injury – a risk of

future harm – was unrelated to a traditional harm. *See id*. at *4 (finding that while "FACTA as a whole may implicate traditional privacy interests, [the plaintiff's] alleged injury [did] not."). Next, the court noted that although the only alleged injury was a future risk of identity theft, the complaint was devoid of any allegations "demonstrating a risk sufficiently 'actual or imminent' to constitute a concrete injury," such as allegations that anyone had accessed or attempted to access the consumer's credit card information. *Id.* at *3. Accordingly, because the plaintiff failed to demonstrate a concrete threat of harm that was certainly impending, the court found that he did not have Article III standing. *Id.*

Similarly, here, Plaintiff's allegations amount to a "bare" statutory violation of FACTA, "divorced from any concrete harm," and thus, are insufficient to establish a concrete injury-in-fact. At the outset, this is not a case where the mere allegation of a statutory violation constitutes an injury-in-fact. In that regard, unlike a case implicating the traditional right of an individual to protect the dissemination of private information, *see, e.g.*, *In re Horizon*, 846 F.3d at 641 (holding that "the improper disclosure of one's personal data in violation of FCRA is a cognizable injury for Article III standing purposes."), here, the alleged harm – a future risk of identity theft resulting from the printing of more than five numbers of Plaintiff's credit card – is not closely related to a harm that "has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

Moreover, the only injury alleged in the Complaint – that, as a result of Defendants' failure to comply with FACTA's truncation provision, Plaintiff has been exposed to "an elevated risk of identity theft" in the future, Compl. ¶ 4 – is precisely the sort of "'bare procedural violation . . . [that] may result in no harm" that is insufficient to constitute a concrete injury-in-fact. *Spokeo*, 136 S. Ct. at 1549. In that regard, it is well-established that allegations "of

possible future injury are not sufficient to satisfy Article III. Instead, [a] threatened injury must be certainly impending, and proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citations and internal quotation marks omitted). As in *Kamal*, here, the Court cannot find that the harm alleged by Plaintiff – an increased risk of future identity theft – is certainly impending, such that Plaintiff has Article III standing. Simply put, Plaintiff's alleged harm rests purely on conjecture, as the Complaint fails to even include allegations that Plaintiff's credit card information was accessed by another individual, let alone allege with any degree of specificity how someone may access that information in the future. As a result of these deficiencies, the Court is left to speculate as to how any alleged identify theft will occur. Moreover, outside the context of FACTA, the Third Circuit has held that "allegations of an increased risk of identity theft . . . are . . . insufficient to secure standing." *Reilly*, 664 F.3d 43. Under these circumstances, the Court cannot find that Plaintiff has alleged a concrete injury-in-fact, and thus, Plaintiff lacks Article III standing.[6]

### C. Remand is Required

Having found that Plaintiff lacks Article III standing, and thus, that this Court does not have subject matter jurisdiction over this case, the Court must turn, next, to the parties' arguments regarding whether the proper course of action is to remand or dismiss this case. In that regard, Plaintiff argues that because this Court lacks subject matter jurisdiction, it must

---

[6] Additionally, because Plaintiff lacks standing with respect to the sole claim asserted in this action, CAFA is not a basis for removal; *i.e.*, without standing to assert a cause of action, Plaintiff cannot represent the putative class. *See Finkelman*, 810 F.3d at 195 ("Absent [Article III] standing on the part of the named plaintiffs, we must dismiss a putative class action for lack of subject matter jurisdiction."); *Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 6213777, at *8 (D.N.J. Dec. 13, 2012).

remand this case under 28 U.S.C. § 1447(c). Conversely, Defendants argue that this case should be dismissed, rather than remanded, because remand would be futile and would run contrary to public policy and Congressional intent.

Defendants' arguments for dismissing this case, rather than remanding, warrant little discussion. Significantly, 28 U.S.C. § 1447(c) expressly provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be remanded.*" 28 U.S.C. § 1447(c) (emphasis added). As the Court has already found, here, Plaintiff's allegations are insufficient to establish Article III standing, and thus, this Court lacks subject matter jurisdiction. *Finkelman*, 810 F.3d at 195. And, fatal to Defendant's argument, the Third Circuit has instructed that where subject matter jurisdiction is lacking in a removal case, the literal words of § 1447(c) – providing that removed cases "shall" (as opposed to "may") be remanded – require district courts to remand the case, even if remand may be futile.[7] *See Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, *it must remand and not dismiss on the ground of futility.*") (emphasis added); *see also Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 540 (3d Cir. 1994) ("[A] determination that there is no standing 'does not extinguish a removed state court case.' Rather, federal law 'only requires . . . remand . . . to state court.'") (citations omitted). Indeed, because state courts are not bound by the constraints of the Article III case or controversy requirement, it follows that a "lack of federal jurisdiction does not obviate the remand requirement of § 1447(c)." *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 17-1794, 2018 WL 3719694, at *4 (8th Cir. Aug. 6, 2018).

---

[7] For the same reasons, the Court rejects Defendants' arguments that this Court should impose a futility exception into § 1447(c), and thus, decline to remand this case on the ground that Plaintiff will not be able to state a claim.

Moreover, courts addressing this precise issue have consistently found that, where a defendant removes a case from state court based on a federal question, but Article III standing is lacking, the proper recourse is to remand the case, rather than to dismiss the action. *See*, *e.g.*, *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (holding, in a case that was removed under FACTA, that, upon finding that Article III standing was lacking, "§ 1447(c) required the district court to remand this case to state court" rather than to dismiss it); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (holding that, where Article III standing is lacking in a case removed on the basis of federal question jurisdiction, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III."); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) (holding that, when it becomes apparent in a removal case that Article III standing is lacking, "the federal court *must* remand the case to the state court from whence it came.") (emphasis in original); *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1226 (10th Cir. 2012) ("[O]ur court has held that '[t]he plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction.'") (quoting *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557-58 (10th Cir. 2000)); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989) (holding that, where Article III standing is lacking in a case removed on the basis of a federal question, § 1447(c) "require[s] the [federal] court to remand the case."); *Brookens v. Am. Fed'n of Gov't Employees*, No. 17-2206, 2018 WL 2694452, at *7 (D.D.C. June 5, 2018) (finding that remand, rather than dismissal, is the proper remedy where Article III standing is lacking in a removal case); *Mocek*, 220 F. Supp. 3d at 913 (holding that remand, rather than

18

dismissal, was required upon concluding that the plaintiff lacked Article III standing in a case removed on the basis of a FACTA claim).

In short, because Article III standing is lacking in this case, this Court lacks subject matter jurisdiction. And, because subject matter jurisdiction is lacking, remand is mandated under § 1447(c) and the guiding precedent in this Circuit. Thus, because § 1447(c) provides the clear remedy in this case – remand – the Court rejects Defendants' invitation to consider issues of public policy and futility. Accordingly, this matter is remanded.[8]

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED, and thus, this matter is remanded to the Superior Court of New Jersey, Ocean County, Law Division. Defendants' Motion to Dismiss is DENIED as moot.

Dated: August 13, 2018 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge

---

[8] In finding that Plaintiff lacks Article III standing to pursue his claim in federal court, and, therefore, that this Court lacks subject matter jurisdiction over this action, this Court need not reach the other issues raised Defendants' Motion to Dismiss, including its arguments under Federal Rule of Civil Procedure 12(b)(6). *See Bromwell*, 115 F.3d at 213-14.